AO 91 (REV.5/85) Criminal Complaint　　　　　　　　　　　　AUSA Christopher R. McFadden
　　　　　　　　　　　　　　　　　　　　　　　　　　　　(312) 353-1931

# UNITED STATES DISTRICT COURT

**NORTHERN** DISTRICT OF **ILLINOIS, EASTERN DIVISION**

UNITED STATES OF AMERICA　　　　　　CRIMINAL COMPLAINT

v.　　　　　　　　　　　　　　　　　　UNDER SEAL
　　　　　　　　　　　　　　　　　　　MAGISTRATE JUDGE COLE
ANNETTE N. SANDOVAL　　　　　　　　　CASE NUMBER:
　　　　　　　　　　　　　　　　　　　08CR    627

I, Christopher A. Hume, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief:

On or about <u>October 12, 2007</u>, at and around <u>Villa Park</u>, in the <u>Northern District of Illinois</u>, for the purpose of executing a scheme to defraud Bloomingdale's, Inc., and to obtain property by means of false and fraudulent pretenses, representations and promises, defendant knowingly caused to be transmitted by means of wire communication in interstate commerce, certain wires, signs and signals, namely, telephone calls from in and around Villa Park, Illinois to Chestnut Hill, Massachusetts, for the purpose of ordering $1,015.36 in merchandise belonging to Bloomingdale's, Inc.; in violation of **Title 18, United States Code, Section 1343**.

I further state that I am a <u>Special Agent of the U.S. Secret Service</u> and that this complaint is based on the following facts:

**See attached affidavit**

Continued on the attached sheet and made a part hereof: __X__ Yes ___ No

FILED
AUG 0 7 2008 TC
August 7, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

August 7, 2008　　　　　　　　　　　　　at Chicago, Illinois
Date　　　　　　　　　　　　　　　　　　　City and State

JEFFREY COLE, U.S. MAGISTRATE JUDGE　　_____
Name & Title of Judicial Officer　　　　Signature of Judicial Officer

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) SS |
| COUNTY OF COOK | ) |

### AFFIDAVIT

I, Christopher A. Hume, being duly sworn, state as follows:

### I. INTRODUCTION

1. I am a Special Agent with the United States Secret Service ("Secret Service") and have been so employed since January 2002. I am currently assigned to the Chicago Field Office Counterfeit Division. I have received training and gained experience in the investigation of financial crimes committed through identity theft, access device fraud, bank fraud, wire fraud, money laundering, forgery, and the receipt of fraudulently obtained property. My current responsibilities include the investigation of such financial crimes.

2. This affidavit is made in support of a criminal complaint charging Annette N. Sandoval with a violation of 18 U.S.C. § 1343 (wire fraud), in that for the purpose of executing a scheme to defraud Bloomingdale's, Inc., and to obtain property by means of false and fraudulent pretenses, representations, and promises, defendant knowingly caused to be transmitted by means of wire communication in interstate commerce certain wires, signs and signals, namely, telephone calls from in and around Villa Park, Illinois, to Chestnut Hill, Massachusetts, for the purpose of ordering $1,015.36 in merchandise belonging to Bloomingdale's, Inc.

3. The information contained in this affidavit is based upon my firsthand knowledge as well as information provided by other law enforcement officers and witnesses, as well as non-law enforcement witnesses and evidence from recorded conversations. Where statements of others are set forth, they are done so in substance and in part; they are not verbatim.

4.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that Sandoval committed violations of 18 U.S.C. § 1343.

## II. PROBABLE CAUSE: FACTS AND CIRCUMSTANCES

### Overview of the Scheme

5.  The Secret Service has been investigating the fraudulent activity of Annette N. Sandoval for several years. I have been the case agent since approximately November 2006. Based on my investigation, including interviews with Individuals A through G, Sandoval has orchestrated a scheme to defraud retailers by obtaining credit card numbers that belong to other individuals and then fraudulently using those numbers to purchase merchandise on the other individuals' credit cards.

6.  Based on my investigation, as set forth in more detail herein and from several sources, including interviews with Individuals A through G, in order to perpetrate this fraudulent scheme, either Sandoval or other persons working on behalf of Sandoval stole clientele books from department stores such as Neiman Marcus or Saks Fifth Avenue. Clientele books are used by sales associates and typically contain information such as the names, addresses, phone numbers, credit cards numbers, and preferences of certain customers. After obtaining other individuals' credit card numbers, Sandoval or others acting on her behalf used the card to order merchandise from retailers, typically over the telephone but also via the Internet. Sandoval gave the retailers an address other than her own and then caused other individuals to wait to pick up the package. These other individuals either approached the delivery person and falsely claimed that they were the intended recipient of the package, or they waited until the package was delivered, and then they stole it.

2

Sandoval then caused the individuals to return the packages to her at her residence at 2724 W. 55th Street in Chicago, Illinois, or at some other location. Sandoval kept certain of the merchandise and sold the rest of it to others.

## Scope of the Scheme

7. On or about May 15, 2006, the Secret Service was contacted by a loss prevention agent at Neiman Marcus ("Neiman"), who stated that a sales associate's clientele book was stolen from Neiman's retail store in Northbrook, Illinois. According to the loss prevention agent, the clientele book contained the names, addresses, phone numbers, and credit card numbers of certain Neiman customers. The book also contained the customers' preferences in clothing sizes and styles.

8. On or about August 4, 2006, I was contacted by another Neiman loss prevention agent. This agent advised me that Neiman's records showed that on or about July 20, 2006, a phone call was placed from phone number XXX-XXX-1489 to an extension at Neiman that allows the caller to access an automated voice response system and determine the current validity and status of any given Neiman charge card. I was told by the Neiman agent, and I know from obtaining subscriber information from AT&T in November 2007, that the phone number XXX-XXX-1489 is the land-line phone number subscribed to by Annette Sandoval's mother for the subject premises at 2724 W. 55th Street in Chicago.

9. I have been advised by an employee of American Express ("AmEx") that various AmEx cards or card numbers were reported stolen during 2006. The employee further explained that between May 2006 and December 2006, the phone number XXX-XXX-1489 was used a total of 38 times to call an automated "800" number with AmEx in order to determine whether the stolen credit cards remained valid. According to records provided by AmEx, certain of those stolen credit

3

card numbers were used to purchase merchandise after their validity had been confirmed from the phone number 773-471-1489.

10. On March 29, 2007, I was again contacted by a loss prevention agent at Neiman Marcus, who stated that another clientele book had been stolen and that purchases were being made on credit cards belonging to customers whose names were in the stolen clientele book. Approximately one month later, on or about April 27, 2007, I learned from AmEx that two additional credit cards had been used without the consent of the true cardholders to purchase merchandise from Restoration Hardware and have the packages delivered to an address in Chicago.

11. According to Cuyahoga County court records, on May 3, 2007, Sandoval and another person, Individual A, were arrested at a hotel in Independence, Ohio. Arrest reports from the Independence Police Department reflect that Sandoval and Individual A were charged with the Class 4 felony of unlawfully receiving, retaining, or disposing of $5,000 to $100,000 of property with the knowledge that it had been obtained through the commission of a theft offense. According to arrest reports and materials found in the possession of Sandoval and Individual A, between April 30, 2007 and May 2, 2007, Sandoval and Individual A fraudulently ordered merchandise on the credit cards of other people, making orders through Saks Fifth Avenue stores in Chicago, San Diego, Beverly Hills, and Troy, Michigan, and then arranging for the materials to be shipped to hotels in Michigan and Ohio where she and Individual A were staying.

12. Sandoval was released on bond after being charged with the above-referenced offense. On or about October 12, 2007, while on bond, Sandoval met with Individual B. Individual B was equipped with a device that could record any statements made in the immediate vicinity of the device. During certain of the recordings, Sandoval stated that her phone number is XXX-XXX-3374 ("the subject phone"). Subscriber information that I have obtained from AT&T in November

2007 shows that the financially liable party for the subject phone is Sandoval's mother, Aurora Sandoval, at the address of 2724 W. 55th Street #1 in Chicago. All of the calls discussed in Paragraphs 13 through 20 are listed in phone records that I obtained from AT&T. Furthermore, in the calls discussed in Paragraphs 13 through 20, it is possible to hear Sandoval speaking on the telephone, but it is difficult or impossible to hear what is being said by the other party or parties to the phone calls.

13. On October 12, 2007, in a conversation recorded by the device used by Individual B, Sandoval used the subject cell phone to call a phone number for Bloomingdale's in Chestnut Hill, Massachusetts. Sandoval was connected to two sales associates. Sandoval claimed that her name was "Diane" and stated that she wanted to order several waist-length jackets, denim jeans, and belts. Sandoval gave one of the associates the phone number of the subject phone and asked the associate to call her back later in the day.

14. On October 12, 2007, Sandoval used the subject cell phone to call directory assistance and ask for the phone numbers for the Bloomingdale's stores in Chicago and Minnesota.

15. On October 12, 2007, Sandoval used the subject cell phone to call directory assistance and ask for reverse directory assistance. Sandoval gave the phone number of XXX-XXX-2357, which I know from a subsequent interview of Victim KH is the land-line phone number subscribed to by Victim KH.

16. On October 12, 2007, Sandoval used the subject cell phone to call a phone number for Bloomingdale's in Minneapolis. Sandoval asked for the womens' accessories department. Sandoval stated that she wanted to order two pairs of sunglasses and that she was making a phone order.

17. On October 12, 2007, Sandoval received a call on the subject cell phone from a phone number that is for Bloomingdale's in Chicago. Sandoval stated that her Bloomingdale's account number was XXX-XXX-611. Sandoval provided a billing address in Bloomington, Minnesota and the name of Victim KH. Sandoval stated that the package should be sent to an address in Chicago. On or about January 15, 2008, I spoke with Victim KH, who confirmed that the billing address provided by Sandoval belongs to Victim KH and his/her family. Victim KH stated that he/she has never allowed Sandoval to use her Bloomingdale's credit card, that he/she did not make any purchase from Bloomingdale's in October 2007, and that he/she did not request to have any purchase shipped to an address in Chicago.

18. On October 12, 2007, Sandoval again used the subject cell phone to call a number for Bloomingdale's in Minneapolis. Sandoval asked to be connected to the womens' sunglasses department and stated that she was not transferred the last time she called. Sandoval then stated that she wanted two pairs of sunglasses, Chanel and Christian Dior. She also stated that she needed two watch straps. Sandoval gave the phone number of the subject phone to the sales associate, stating that she wanted the associate to call her back. Sandoval further stated that her name was Victim JM.

19. On October 12, 2007, Sandoval received a call on the subject cell phone from a phone number for Bloomingdale's, Inc., in New York. Sandoval stated that her account number was XXX-XXX-591 and that her name was Victim JM with a billing address in Edna, Minnesota. Sandoval further requested that the order be shipped to Individual DH at an address in Chicago. Sandoval asked for overnight delivery and said that she would pay an extra fee for Saturday delivery. Sandoval then asked the caller to call her back again later. On or about November 28, 2007, I spoke with Victim JM, who confirmed that the billing address provided by Sandoval belongs to Victim ~~KH~~ JM [cw] and his/her family. Victim ~~KH~~ JM [cw] stated that he/she has never allowed Sandoval to use his/her

6

Bloomingdale's credit card, that he/she did not make any purchase from Bloomingdale's in October 2007, and that he/she did not request to have any purchase shipped to an address in Chicago.

20. On October 12, 2007, according to phone records received from AT&T for the subject phone, Sandoval placed another phone call to the Bloomingdale's store in Chestnut Hill, Massachusetts. This call was not recorded.

21. Records obtained from Bloomingdale's reflect that an October 12, 2007, the Bloomingdale's store in Chestnut Hill, Massachusetts processed an order under the name of Victim DS. Bloomingdale's records show that the order consisted of seven items, including three jackets and several pairs of jeans, for a total of $1,015.36. The order was charged to Victim DS's Bloomingdale's charge card and was a result of the series of phone calls detailed above in Paragraphs 13 and 20. Records obtained from United Parcel Service show that on or about October 12, 2007, the order was shipped to the same address in Chicago that Sandoval provided to Bloomingdale's associates in other calls when she was claiming to be persons other than herself.

22. On or about January 15, 2008, I spoke with Victim DS, who stated that he/she has never allowed anyone to use his/her Bloomingdale's charge card and that he/she did not make any purchase from Bloomingdale's on October 12, 2007. Individual DH further stated that he/she does not know anyone in the Chicago area who would have used her card and that she did not have any purchase shipped to Chicago in October 2007.

### III. CONCLUSION

23. Based on the foregoing evidence, I submit that there is probable cause to believe that on or about October 12, 2007, Annette N. Sandoval committed a violation of 18 U.S.C. § 1343 (wire fraud), in that for the purpose of executing a scheme to defraud Bloomingdale's, Inc., and to obtain property by means of false and fraudulent pretenses, representations and promises, defendant

knowingly caused to be transmitted by means of wire communication in interstate commerce, certain wires, signs and signals, namely, telephone calls from in and around Villa Park, Illinois to Chestnut Hill, Massachusetts, for the purpose of ordering $1,015.36 in merchandise belonging to Bloomingdale's, Inc.

FURTHER AFFIANT SAYETH NOT

Christopher A. Hume
Special Agent, U.S. Secret Service

Sworn to before me on this 7th of August 2008.

Honorable Jeffery Cole
United States Magistrate Judge